IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00105 LTB-MJW

EAST WEST RESORT TRANSPORTATION, LLC, doing business as
COLORADO MOUNTAIN EXPRESS and/or
CME PREMIER and/or
PREMIER VIP TRANSPORTATION and/or
RESORT EXPRESS a/k/a
COLORADO MOUNTAIN EXPRESS, LLC,

      Plaintiff,

v.

RON BINZ,
POLLY PAGE, AND
CARL MILLER, in their official capacities as Commissioners of the Public Utilities
Commission of the State of Colorado,

      Defendants.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

<div align="right">

Thomas J. Burke, Jr.
Jones & Keller, P.C.
1625 Broadway, Suite 1600
Denver, CO 80202
Phone: (303) 573-1600
Facsimile: (303) 573-8133
E-mail: tjburke@joneskeller.com

Fritz R. Kahn
Fritz R. Kahn, P.C.
1920 N. Street, NW, 8th Floor
Washington, DC 20036-1601
Phone: (202) 263-4152
Facsimile: (202) 331-8330
xiccgc@att.net

</div>

**TABLE OF CONTENTS**

I.      Description of Dispute and Procedural Posture of the Case . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Parties and the Nature of the Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      The Plaintiff and its Legal Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                2.      The Defendant and its Legal Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      The Litigation in this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      CME Does Not Rely on a Statutory Federal Incidental-to-Air Exemption . . . . . 12

        B.      CME Operates Under Affirmatively-Granted Federal Operating Authorities   . . 14

        C.      CME Has Provided Bona Fide and Substantial Interstate Service Under its
                Federally-Granted Operating Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      The Pertinent Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                2.      CME's Regular Route Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        D.      Informal Expressions of Opinions By Lay Employees of a Federal Agency
                Are Negligible Value Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.      Requested Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 04-cv-00105 LTB-MJW

EAST WEST RESORT TRANSPORTATION, LLC, doing business as
COLORADO MOUNTAIN EXPRESS and/or
CME PREMIER and/or
PREMIER VIP TRANSPORTATION and/or
RESORT EXPRESS a/k/a
COLORADO MOUNTAIN EXPRESS, LLC,

       Plaintiff,

v.

RON BINZ,
POLLY PAGE, AND
CARL MILLER, in their official capacities as Commissioners of the Public Utilities Commission
of the State of Colorado,

       Defendants.

_____

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

_____

       Plaintiff East West Resort Transportation, LLC, doing business as Colorado Mountain

Express and/or CME Premier and/or Premier VIP Transportation and/or Resort Express a/k/a

Colorado Mountain Express, LLC ("CME") submits herewith, in accordance with Fed. R. Civ. P.

56, CME's Brief in Support of Motion for Summary Judgment in connection with the Motion for

Summary Judgment CME has filed contemporaneously.[1]

## I.
## DESCRIPTION OF DISPUTE AND
## PROCEDURAL POSTURE OF THE CASE.

The present action results from the filing, on January 20, 2004, of CME's Complaint for

Declaratory Judgment and Related Injunctive Relief. Reduced to its essentials, CME filed this

action in response to the attempted enforcement by the Public Utilities Commission of the State

of Colorado, acting through its three Commissioners (the "CPUC"), of its claimed right to

enforce its statutory regime of rate and fare controls on CME, through its power to levy fines on

carriers subject to its jurisdiction.

The particular fine the CPUC proposed to charge, which CME believed would be

followed by others, totaled $6,400, for CME's failure to charge fares on file and in effect with

---

[1]      In accordance with D.C.COLO.L.CivR 7.1D, reference to unpublished opinions consisting of unpublished federal agency decisions will be accompanied by a separately served and tabbed "Plaintiff's Appendix of Unpublished Opinions," which will be referred to by identifying tab, a short reference to the decision, and pertinent page and/or paragraph numbers, e.g. "App. Unpub. Dec., Jones v. Smith, Tab 3, p.4."

Reference to exhibits of the stipulated record made by the parties before the Surface Transportation Board of the United States Department of Transportation ("STB") will be denoted herein by record and exhibit reference e.g., "Rec., Ex. 4," followed by a short description of the document, followed finally by the pertinent page or paragraph of the exhibit, i.e., "p.," "pp.", and/or ¶, ¶¶, etc.

the CPUC for scheduled motor carrier passenger transportation service.[2] CME declined to pay the fine demanded and brought this action for declaratory and injunctive relief. Following the failure of settlement efforts, CME filed a Petition for Declaratory Order before the STB on September 24, 2004 and in its decision denying the CPUC's Motion to Dismiss on Rule 12(b)(1) grounds, this Court stayed further proceedings pending determinations by the STB. East West, at 371 F.Supp.1266-1267.

On March 18, 2005 the STB granted the pending Petition for Declaratory Order and calendared the proceeding for submission of evidence both in support of, and opposing, the requested declaratory relief App. Unpub. Dec. Tab 1, p.2.  In due course, CME and the CPUC made evidentiary filings with the STB in accordance with that agency's directions together with legal argument.

After a period of sixteen months following the close of the evidentiary record on September 30, 2005 to CME's surprise, the STB reconsidered its having accepted the Petition for Declaratory Order on March 18, 2005, determined it was without jurisdiction, announced this Court could decide the dispute, and terminated the STB's proceeding. App. Unpub. Dec., Tab 2, p.3.

On March 30, 2007, at the parties' suggestion, this Court held a Status and Scheduling Conference. As the result of this conference, based on the CPUC's statement that it did not

---

[2]     On June 3, 2005 this Court denied the CPUC's Motion to Dismiss based on lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) in East West Resort Transp., LLC v. Sopkin, 371 F. Supp. 1253 (D. Colo. 2005). A description by the Court of the initial procedural course of the dispute before this Court appears at pp.1256-1257. CME does not believe that it could improve on the Court's description and in the interest of brevity will not do so.

intend to take further enforcement action against CME pending this Court's final determination,

the Court denied CME's pending Motion for Preliminary Injunction without prejudice, and then

directed that the parties file simultaneous motions for summary judgment on or before Friday,

May 25, 2007. CME and the CPUC have now filed their respective Motions for Summary

Judgment, together with their jointly submitted "Parties' Stipulations as to Fact and Related

Matters," which both CME and the CPUC have agreed constitutes an agreed set of verified

statements, deposition extracts and other documents on which this Court may premise summary

judgment.

<div align="center">

**II.**
**FACTUAL BACKGROUND**

</div>

**A.     The Parties and Nature of the Dispute**

**1.     The Plaintiff and its Legal Status**.

CME  is a motor carrier, as defined in 49 U.S.C. 13102(12), federally authorized to

render scheduled, regular-route, intercity motor carrier passenger transportation services

principally between Denver International Airport ("DEN") and points in Eagle County, including

the Vail and Beaver Creek ski resorts, and the Eagle County Regional Airport ("EGE") and

points in Pitkin County, including the Aspen and Snowmass ski resorts, pursuant to certificates

issued by the former Interstate Commerce Commission ("ICC"), in Docket No. MC-169174.[3]

---

[3]     By joining, or "tacking" its authorized routes at common points of service, CME is authorized under the described ICC operating authorities to provide "through" service between DEN, Aspen, Snowmass, and points in Summit County, Colorado.  Copies of its federal granted operating authorities appear as Rec. Exs. 1 through 7, respectively.

TMS, LLC, formerly Resort Express, LLC, is a motor carrier authorized to render scheduled, regular-route, intercity passenger transportation services principally between DEN and points in Summit County, including the Keystone, Breckenridge and Copper Mountain ski resorts, pursuant to certificates issued by the ICC in Docket No. MC-181367.[4]

Following an authorizing decision, served January 10, 2003, the operating authorities of East West Resort Transportation, LLC, were conveyed to TMS, LLC, which, in turn, leased its operating authorities to East West Resort Transportation, LLC.

Although its routes lie wholly within Colorado, CME contends it has performed a substantial part of its motor carrier transportation of passengers in interstate commerce pursuant to vacation packages offered through United Airlines and American Airlines and travel agents, such as The Mark Travel Corporation, Aspen Ski Tours and Moguls Mountain Travel. Additionally, the transfer of passengers by CME between DEN and EGE, on the one hand, and, on the other, the several ski resorts has been arranged by organizations, such as the Vail Resorts Management Company and Aspen Snowmass Central Reservations.[5]  Finally,  prearranged transportation by CME has been booked in advance by third parties, such as tour operators, meeting coordinators, ski resorts, hotels, motels, ski clubs and the like.[6]  Examples of the all-

---

[4]    The common control of Colorado Mountain Express, LLC, and Resort Express, Inc., a corporation later changed to a limited liability company, was approved by Decision of this Board, in STB Docket No. MC-F-20909, East West Resort Express, LLC–Control–Resort Express, Inc., served May 23, 1997. Rec., Ex. 9.

[5]    Rec., Ex. 18, Verified Statement of Jay R. Ufer, pp. 3-5.

[6]     A description of CME's earlier operations and of the nature of the current controversy between CME and the CPUC may be found in Aspen Limo. v. Colorado Mountain

inclusive "packages" assembled by third-party customers of CME appear at Rec., Rec. Exs. 10 through 13, in which a varied combination of various vacation elements including transportation provided by CME, lodging, ski lift tickets, restaurant reservations and the like are assembled by such third parties.  As to transportation service provided by CME, a substantial portion is rendered seamlessly from airline to van upon arrival, and from van to airline upon departure.[7]

Although CME holds authority to render intrastate operations authorized by the CPUC over routes substantially duplicating its interstate routes, CME has elected to perform the intrastate transportation it renders over its interstate routes. CME may do so pursuant to 49 U.S.C. § 13902(b)(3), which provides:

> A motor carrier of passengers that is registered by the Secretary [of Transportation] is  . . . authorized to provide regular-route transportation entirely in one State as a motor carrier of passengers if such intrastate transportation is to be provided on a route over which the carrier provides interstate transportation of passengers.

Although CME's routes at issue lie wholly within Colorado, CME has conducted *bona fide* and substantial interstate operations over its authorized routes transporting out-of-state passengers pursuant to vacation packages assembled by third parties, which include the interstate air and single-state ground transportation.  Such air-ground packages often include the passengers' lodging and lift tickets.  In some instances the transfers by CME between the airports and the passengers' hotels or ski resorts have been arranged through the web pages of the airlines

---

Exp., Inc., 891 F. Supp. 1450 (D. Colo. 1995), and Aspen Limo v. Colorado Mountain Exp., Inc., 919 F. Supp. 371   (D.Colo. 1996).

[7]         Rec., Ex. 18, Verified Statement of Jay R. Ufer, pp.3

themselves, principally United Airlines.[8]  Other of CME's passengers have made arrangements for their transportation in CME's vehicles via third-party airline-oriented web pages, such as Orbitz,  Expedia and Travelocity.   The largest number of CME's passengers traveling pursuant to pre-arranged vacation packages covering both the interstate air and ground transportation, however, have been booked through such "packaging" entities as The Mark Travel Corporation, (which is actually the ground transportation third party arranger of United Airlines' air-ground packages),[9]  Lynx Ski and Golf Vacations, Aspen Ski Tours, Inc.[10] and Moguls Mountain Travel.[11]  Still others have had their transfers by CME between DEN and EGE, on the one hand, and, on the other, the hotels and ski resorts arranged by organizations such as the Vail Resorts Management Company[12] and Aspen Snowmass Central Reservations.  Finally, prearranged

---

[8]      Rec., Ex.18, Verified Statement of Jay R. Ufer, pp. 3-4.

[9]      Rec., Ex. 18, Verified Statement of Jay R. Ufer, p. 4.

[10]      Rec., Ex. 19,  is the Verified Statement of Mark Uhlfelder, Vice President of S&L Travel Partners, Inc., which operates Ski.Com and Aspen Ski Tours, Inc., and who states that in 2003 CME performed the ground transportation following or preceding their air travel of 5,866 of its customers.

[11]      Rec., Ex. 20,  is the Verified Statement of Bruce Rosard, President of Moguls Mountain Travel, who says that virtually all of its customers come from outside of Colorado and that it makes extensive use of CME for the motor vehicular segment of the through transportation.

[12]      Rec., Ex. 21,  Verified Statement of Chris Jarnot, Vice President of Marketing and Sales for Vail Resorts Management Company, who states that in 2003 it arranged for 20,115 guest seats, virtually all of the passengers having come from outside Colorado, to use the transfer services of CME following or preceding their interstate airline flights.

transportation by CME, as well as airline service, have been booked in advance by third parties, such as tour operators, meeting coordinators, ski resorts, hotels, motels, ski clubs and the like.

As detailed by Mr. Ufer, as supplemented in his Rebuttal Verified Statement,[13] approximately one quarter of all of CME's scheduled, regular-route, intercity passenger transportation business has been pursuant to pre-arranged vacation packages which include the interstate airline travel, the hotel or ski resort accommodations, lift tickets and other amenities, as well as the transfer in CME's vans between the airports and the passengers' lodgings.  These amounted in 2003, the most current period available in 2004 when the record was prepared of approximately 24% of CME's overall regular route transportation, or 62,807 passengers.  A compilation of such business, both overall, and including the portion arranged by third parties as part of a package from out of state origin, out of state destination, or both, is contained in CD-ROM format as "conventionally submitted materials" and identified as Rec., Ex. G.

     2.       **The Defendant and its Legal Status**.

The CPUC is the agency of the State of Colorado vested with authority to regulate public utilities, including the intrastate transportation provided by motor carriers of passengers, absent preemption by supervening federal legislation.

Notwithstanding the unambiguous language of 49 U.S.C. § 13902, however, the CPUC, on or about October 1, 2003, commenced an enforcement proceeding against CME, charging CME with having carried passengers on its vehicles at rates not on file with the CPUC, in claimed violation of §40-10-117, Colo. Rev. Stat. Ann. Rec. Rec., Ex.17.

---

[13]       Rec. Ex E, Verified Rebuttal Statement of Jay R. Ufer, pp.2, 3.

This Civil Penalty Assessment Notice shows that the CPUC seeks to impose a penalty of $400 for each listed CME passenger route segment on September 29 and 30, 2003, for a total of $6,400, with regard to CME passengers who were assessed a fare neither filed with nor prescribed by the CPUC.  CME anticipates  that, if the CPUC's position is upheld, the CPUC will impose additional such financial penalties for CME's transportation of passengers at other than the filed and prescribed rates on other days.

In STB Docket No. MC-F-20902, <u>Colorado Mountain Express, Inc. and Airport Shuttle Colorado, Inc., d/b/a Aspen Limousine Service, Inc.–Consolidation and Merger–Colorado Mountain Express</u>, served February 28, 1997,[14] again referring to CME, the STB stated:

> [T]here are two . . . preemptions from state regulation that relate to operations and are conferred independently under the statute and do not result from our jurisdiction over a specific transaction under 49 U.S.C. 14303.  Specifically, with respect to interstate and intrastate transportation (other than intrastate commuter bus operations) by motor passenger carriers on interstate routes, 49 U.S.C. 14501(a) provides that states may not regulate either: (1) operating schedules (except that states may require not more than 30 days' notice of schedule changes); or (2) rate changes in regular-route or charter operations.

Preemption of such state regulation is clearly authorized under the Supremacy Clause, Art. VI, Clause 2 and the Commerce Clause, Art. I., Section 8, Clause 3 of the U.S. Constitution.  That Congress may preempt state law regulating intrastate motor carrier service is beyond dispute in this Circuit. <u>Kelley v. United States</u>, 69 F.3d 1503, 1510 (10th Cir. 1995).

CME contends that the preemption provisions of 49 U.S.C. § 14501(a) bar the CPUC from proceeding with its state enforcement action. One of the purposes for the enactment of the

---

[14]      Rec., Ex. 8, p.3.

ICC Termination Act of 1995, CME maintains, was to relieve Federally franchised motor

carriers of passenger of the burdens of rate regulation and to foreclose state agencies from

imposing their own rate regulatory requirements in lieu thereof.

While the CPUC will presumably acknowledge that it cannot enforce its rate filing

requirement upon motor carriers of passengers engaged in interstate commerce, CME anticipates

the CPUC will contend that CME is not engaged in operations in interstate commerce over its

authorized routes and, hence, that the preemption provisions of 49 U.S.C. § 14501(a) do not

constrain it from proceeding against CME for having failed to file its rates with the CPUC or that

CME has assessed rates not prescribed by the CPUC.

Alternatively, CME anticipates that the CPUC may argue that to the extent CME does in

fact provide *bona fide* interstate service, such service is so unsubstantial as not to authorize the

transportation of intrastate passengers over the same routes as provided for under 49 U.S.C. §

13902(b)(3).

The CPUC is wrong on both counts.

**B.      The Litigation in this Court**.

Faced with the possibility of fines and, eventually, other civil and criminal penalties

being imposed for its failure to file its rates with the CPUC and to assess the CPUC-prescribed

rates pursuant to Colorado regulatory requirements for intrastate motor carrier of passengers,

CME

 brought the present action for declaratory and injunctive relief against the CPUC on January 20,

2004.

In denying the CPUC's Motion to Dismiss this action under Fed. R. Civ.P. 12(b)(1), the Court stayed proceedings in this Court while the parties pursued a Petition for Declaratory Order before the STB, which the STB ultimately dismissed after having first taken jurisdiction, by finding 16 months later that it lacked jurisdiction to decide this dispute. App. Unpub. Dec., Tab 2 East West Resort Transportation, LLC - Petition for Declaratory Order. The STB pointed out in its order dismissing the Petition that this Court could resolve the present dispute between CME and the CPUC.  The present simultaneous motions of CME and the CPUC for summary judgment are therefore submitted in accordance with the Court's direction at its March 30, 2007 Status and Scheduling Conference calling for simultaneous motions for summary judgment so as now to permit the Court to resolve this dispute on agreed and stipulated facts.

# III.
# ARGUMENT

## A.

### *CME Does Not Rely on a Statutory Federal Incidental-to-air Exemption*.

At the outset, CME wishes to emphasize that its operations are provided under Federal operating authorities affirmatively granted by the former ICC.  CME does not, therefore, rely, because it need not, on the so-called incidental-to-air exemption provided for in 49 U.S.C. § 10526(a)(8)(A), currently 49 U.S.C. § 13506(a)(8)(A).

The CPUC may contend that CME is not conducting interstate operations over its authorized routes, seemingly because few, if any, of CME's passengers board its vehicles on through tickets or common arrangements with the air carriers from whose planes the passengers have disembarked or whose planes they will be boarding at DEN or EGE.  In advancing that theory, the CPUC would likely rely on the decision of the ICC in James T. Kimball–Petition for Declaratory Order, 131 M.C.C. 908, 918 (1980), in which the ICC held, "[M]otor transportation wholly within a single State of passengers, or groups of passengers, between an airport and another point in the same State, either prior or subsequent to an interstate air movement from or to the airport, (1) is an intrastate movement where there is no arrangement between the motor carrier and the air carrier for continuous passage or interchange, and (2) is an interstate movement when there is an arrangement (referred to as a 'common arrangement' or 'through ticketing') between the motor carrier and the air carrier for continuous passage or interchange."[15] In that ICC decision,

---

[15]    In Pennsylvania Public Utility Com'n v. U.S., 812 F.2d 8, 11-12 (D.C. Cir. 1987), the court explained, "*Kimball* made clear that the term 'common arrangement' does not include a

however, Kimball held no operating authority from the ICC and was proposing to transport passengers between the Tampa and St. Petersburg/Clearwater airports and hotels within a twenty-five mile radius pursuant to the incidental-to-air exemption provided in 49 U.S.C. §10526(a)(8)(A), currently 49 U.S.C. 13506(a)(8)(A).

The need for through tickets or common arrangements with the previously or subsequently used air carriers discussed in the earlier ICC decisions cited in the <u>Kimball</u> decision, namely, <u>Portland Airport–Petition for Declaratory Order</u>, 118 M.C.C. 45, 47 (1973), and <u>Motor Transp. of Passengers Incidental to Air</u>, 95 M.C.C. 526, 536 (1964), related to what was required in the rendition of unauthorized passenger transportation operations to have them deemed to be incidental-to-air service falling within the exemption from requirements for operating authority afforded by 49 U.S.C. § 13506(a)(8)(A). CME does not provide service pursuant to this exemption.

### B.

### CME Operates Under Affirmatively-Granted Federal Operating Authorities

CME  possesses affirmative grants of operating authority with which to provide its regular route service in Colorado, and does not rely on the incidental-to-air or any other exemption to legitimatize its intrastate operations.   CME is affirmatively licensed to render the pertinent

---

'package tour' involving both air and ground transportation that was arranged by a third party (such as a travel agent)."  CME believes, as stated above, that <u>Kimball</u> does not apply to its interstate operations for the stated reasons, *infra.* Notwithstanding, the I.C.C. did utilize the <u>Kimball</u> test in <u>Midwest Transp., Inc., Common Carrier Application</u>, 98 M.C.C. 362 (1965); <u>Moore Service, Inc., Extension – Migrant Workers</u>, 89 M.C.C. 180 (1962); and <u>Alabama Coaches Co., Inc., Contract Carrier Application</u>, 1 M.C.C. 271 (1936).

intrastate operations within Colorado as an incident to the rights secured from the ICC to undertake the interstate scheduled, regular-route, intercity transportation of passengers on the authorized routes between DEN and EGE, on the one hand, and, on the other, the hotels and ski resorts of Summit, Eagle and Pitkin Counties.[16]

In Funbus Systems, Inc.–Intrastate Operations–Petition for Declaratory Order, 133 M.C.C. 406 (1984), the ICC explained that standards for determining whether authorized motor carrier transportation of passengers falls within the 49 U.S.C. §13506(a)(8)(A) exemption are not controlling in determining whether a motor carrier of passengers is rendering interstate service over its authorized routes so as to enable it to perform incidental intrastate operations on those same routes, pursuant to 49 U.S.C.§ 13902(b)(3), then 49 U.S.C. § 10922(c)(2)(B).  The ICC was careful to point out the "[the incidental-to-air] exemption . . . has no application to the transportation in this proceeding."  It continued by observing that "[a]s indicated, FSI already holds interstate authority in the Sub-No. 6 certificate to conduct operations over the route that is claimed to include exempt transportation." Id., 133 M.C.C.  406, 421-422.

The reviewing court in Funbus Systems, Inc. v. C.P.U.C., 801 F.2d 1120, 1129 (9th Cir. 1986), reversed the ICC and remanded the proceeding to the agency on other grounds, i.e., the agency's failure to make specific factual findings concerning the nexus, if any, between the

---

[16]        After citing to the ICC's § 13506(a)(8)(A) decisions, the STB in its Docket No. MC-F-20902, Colorado Mountain Express, Inc., and Airport Shuttle Colorado, Inc., d/b/a Aspen Limousine Service, Inc.–Consolidation and Merger–Colorado Mountain Express, served February 28, 1997, supra, noted, "CPUC does not question, and seems to acknowledge, that applicants operate in interstate commerce," a position contrary to that it will seemingly now assert.  Rec., Ex.8, p. 2.

-14-

interstate services which Funbus actually operated and its intrastate services.  On remand, the ICC

discontinued the proceeding, because Funbus was performing the challenged airport operations

pursuant to California intrastate operating authority acquired by it in the interim.  Nevertheless,

the ICC, in referring to the interstate service which 49 U.S.C. § 13902(b)(3) obliges a certificated

motorbus operator to perform, declared:

> Our prior decision in these proceedings explained that it is not enough for the
> carrier merely to offer interstate transportation on the route over which it conducts
> intrastate service.  The interstate service must be active.  Moreover, the intrastate
> service may not operate independently of the interstate service, but instead must be
> conducted as a part of existing interstate service.  We further pointed out that the
> required interstate transportation must be an actual regularly scheduled service, it
> must be *bona fide* and involve service in more than one State, and it must be
> substantial [footnote omitted].

Funbus Systems, Inc.–Intrastate Operations–Petition for Declaratory Order, 1988 Fed. Car. Cas.

¶37,536, n. 1, p. 47,455. App. Unpub. Dec., Tab 3, p. 47,455.

Nothing was said by the ICC in Funbus following remand about a need for through

ticketing or common arrangements with the connecting air carriers for the authorized motor

carrier's single-state passenger transportation operations to be deemed to be in interstate

commerce.  On the contrary, the ICC signaled instead that it likely would not utilize only the

Kimball decision for purposes of either the incidental-to-air exemption or for affirmatively

licensed transportation:

> Through ticketing for interstate destinations is *one indicia* of interstate
> service.  One court has held that the common arrangement need not necessarily be
> between the air carrier and the ground carrier [citing Charter Limousine, Inc. v.
> Dade County, 678 F.2d 586 (5th Cir. 1982)].

Id., n.1, ¶37,536, p.46,455 (emphasis supplied).

In other words, whatever validity the requirement for through ticketing and common arrangements with air carriers may have had in determining whether the motor carrier transportation of passengers came within the § 13506(a)(8)(A) exemption, they in no way are determinative of whether an affirmatively certificated single-state motor carrier of passengers is making such *bona fide* and substantial use of its interstate operating rights so as to render incidental intrastate service over its authorized routes. Discussion of these criteria follows.

## C.

### CME Has Provided Bona Fide and Substantial Interstate Service Under its Federally-Granted Operating Authorities

1.    The Pertinent Precedent

In U.S. v. Yellow Cab Co., 332 U.S. 218, (1947), the Supreme Court distinguished between the transportation by taxicab of passengers and their luggage between railroad stations in Chicago, which it held is clearly a part of the stream of interstate commerce, and the use of taxicabs by persons to transport themselves and their luggage between the railroad stations and their homes, offices and hotels in Chicago.

> These taxicabs, in transporting passengers and their luggage to and from Chicago railroad stations, admittedly cross no state lines; by ordinance, their service is confined to transportation "between any two points within the corporate limits of the City." None of them serves only railroad passengers, all of them being required to serve "every person" within the limits of Chicago. They have no contractual or other arrangement with the interstate railroads. Nor are their fares paid or collected as part of the railroad fares. In short, their relationship to interstate transit is only casual and incidental.

Id., 230-231.

The Supreme Court, however, confined its holding in <u>Yellow Cab</u> to those situations in which an additional, or special, arrangement providing for continuous, or through, transportation had not already been made. <u>Id</u>., at 332 U.S. 232 ("What happens prior or subsequent to that rail journey, at least in the absence of some special arrangement, is not a constituent part of the interstate movement.")

Since <u>Yellow Cab</u>,  several courts have held that such a suitable advance "special arrangement" with a third party met the "special arrangement" exception discussed in <u>Yellow Cab</u>. CME believes such decision exemplify the sort of "special arrangement" mentioned by the Supreme Court in <u>Yellow Cab</u>.

Presaging this construction was <u>Southerland v. St. Croix Taxicab Association</u>, 315 F.2d 364 (3rd Cir. 1963), in which local taxicab operators on the island of St. Croix sought and were granted an injunction against other passenger carriers which had agreed, as part of a prearranged all-expense paid travel package, to pick up and deliver vacationing airline passengers between the airport on St. Croix and their hotels.  The local taxi operators had urged, as seemingly will the CPUC here, that such transportation was not part of an arrangement between carriers and, hence, was essentially local in nature.  The Third Circuit rejected that view and ordered the injunction dissolved.

> This is not a situation where the transportation from the airport to the hotel was local haulage in the sense that the traveler's interstate journey had ended at the airports at which point he could independently contract for his transportation service.  On the contrary, the transportation of these individuals had been arranged for them and paid for in advance as an integral part of their all-expense interstate journey.  Hence, it cannot, under these facts, be said that the service rendered by

-17-

> the plaintiff under his contract was distinct and separate from the interstate journey
> or that it was just another local fare.

Id., at 364.

In Charter Limousine, Inc. v. Dade County, 678 F.2d 586 (5th Cir. 1982), the Fifth Circuit

held that persons whose through transportation by air and ground carrier, the latter portion of

which was wholly within Florida, and which was prearranged for by third parties, clearly were

interstate passengers and rejected arguments that the question was resolved by resort to the ICC

decisions construing the incidental-to-air exemption then enacted as 49 U.S.C. § 13506(a)(8)(A).

> The Supreme Court in the Yellow Cab case was not laying down ironclad rules
> which required common arrangements or through ticketing, as contended by Dade
> County and Red Top. Charter's use of the interstate Carey Corporation network to
> accept reservations, and its voucher payment system, satisfies the special
> arrangement criteria stated by the Supreme Court in Yellow Cab.  Other decisions
> support this view.

Id., at 588.

In Executive Town & Country Services, Inc. v. City of Atlanta, 789 F.2d 1523 (11th Cir.

1986), the Eleventh Circuit held that the local trips involved there arose from ground and air trips

prearranged by means other than common arrangement or through ticketing between the air and

ground carriers.  Citing Charter Limousine, supra, at 789 F.2d 1526, the Eleventh Circuit held

that such trips clearly were interstate in nature.  ("We have reviewed the evidence in this case and

are satisfied that Town & Country has established the nexus between its business and interstate

commerce as required by *Yellow Cab* and its progeny.")

Accord, Mustof v. Rice, 663 F. Supp. 1255, 1279 (N.D. Ill. 1987) ("'Plaintiffs contend that

their customers consist of people who are prearranged and scheduled in advance' . . . [D]efendants

-18-

contend that plaintiffs' position 'is a tenuous and unprecedented attempt to drastically increase the scope of the commerce clause.'  We disagree.")

See also, Airline Car Rental v. Shreveport Airport Authority, 667 F. Supp. 293, 296 (W.D. La. 1986); Airport Taxi Cab Advisory Committee v. City of Atlanta, 584 F. Supp. 961, 964 (N.D. Ga. 1983); Park 'n Fly of Texas, Inc. v. City of Houston, 327 F. Supp. 910, 920 (S.D. Tex. 1971); Port of Portland v. Bilic, 757 P2d 423, 427 (Or. App. 1988).

While airlines once may have readily sold through tickets providing for the surface transportation of their passengers, it is clear that they have substantially discontinued the practice. Single ticket air and ground operations are increasingly a thing of the past in any event. At one time, CME's predecessor performed part of its interstate operations by receiving such through tickets.  The practice  has all but disappeared,  however.  Indeed, even though the airlines, such as United Airlines, US Airways and Southwest Airlines, offer vacation packages which may include the transfer by motor carrier of the passengers between the airports and resorts or hotels, the vacation packages in fact are almost exclusively prearranged by third party travel agents, such as The Mark Travel Corporation.  This latter corporation, as Mr. Ufer, states is the entity which actually arranges for CME's service bookings requested via United Airlines' web page.[17]

2.      CME's Regular Route Operations.

CME's regular route transportation operations come well within the scope of the cited federal court decisions.  As noted at the outset, although its routes lie wholly within Colorado, CME has performed a substantial part of its scheduled, regular-route, intercity motor carrier

---

[17]      Rec., Ex. 18, Verified Statement of Jay R. Ufer, p. 4.

transportation of passengers in interstate commerce pursuant to the vacation packages which include both interstate air and single-state ground transportation and which are offered through the web pages of United Airlines and American Airlines and of travel agents, such as The Mark Travel Corporation, Lynx Ski and Golf Vacations, Aspen Ski Tours, Inc.,  and Moguls Mountain Travel.   The transfer of passengers via CME's vehicles between DEN and EGE, on the one hand, and, on the other, the hotels or ski resorts in Summit, Eagle and Pitkin Counties has been included in vacation packages put together by organizations such as Vail Resorts Management Company and Aspen Snowmass Central Reservations.   Finally, transportation by CME, as well as the airlines, has been booked in advance by third parties, such as tour operators, meeting coordinators, ski resorts, hotels, motels, ski clubs and the like.  In short, a substantial number of CME's passengers riding CME's vehicles are concluding or embarking upon their uninterrupted, pre-arranged out-of-state travel.  Such vacation-packaged passengers are in the continuum of the stream of interstate commerce, as Mr. Jay R. Ufer details in his Verified Statement.[18]  Such prearranged movements by third parties in 2003 constituted no less than 24% or 62,807 passengers of CME's regular route operations in Colorado, in which either the customers' origin, destination, or both, were outside Colorado.[19]

_____

[18]      Rec., Ex. 18, Verified Statement of Jay R. Ufer, pp. 3-5.

[19]      In Airporter of Colorado, Inc. v. Interstate Commerce Commission, 866 F.2d 1238, 1242 (10th Cir. 1989), the Tenth Circuit remanded to the ICC. for further findings as to whether the applicant had engaged in "substantial" interstate operations over its interstate routes. On remand, the ICC found that a 28% ratio of interstate passengers to intrastate passengers on the outbound leg of the carrier's trips, and a 24% ratio on the return leg, was "substantial" interstate transportation.  Collins Coaches, Ltd. Common Carrier Application, 1990 Fed. Car. Cas ¶ 37,781, pp. 47065-47066. App. Unpub. Dec., Tab 4.

These prearranged, through movements are substantial by any measure. Mr. Ufer, CME's President, stated that of the total 256,965 passengers CME transported in regular route service in 2003, 62,807 of such passengers were in the category of trips prearranged with a third party, or 24.4% of the total.[20]

### D.

### *Informal Expressions of Opinions By Lay Employees of a Federal Agency Are of Negligible Value Here*

CME anticipates, since the CPUC has done so before the STB, that a handful of letters from employees and other officials of the former ICC, the Federal Highway Administration and what appears to be an unsigned and equivocal draft of a letter attributed to a former Secretary of Transportation, should be entitled to this Court's substantial deference in coming to its decision in the present case.

Each of these letters somewhat confusingly contends that, contrary to the decisions of the various federal district and circuit courts which hold precisely otherwise, in order for a motor carrier of passengers to establish an interstate movement it must enter into a common arrangement only with another carrier, and not with a third person which assembles and prearranges multi-element travel packages including both ground and air transportation.

While such expressions of opinion by various lay employees may be considered by a Court, they should ordinarily be accorded minimal deference. In Packard v. Pittsburgh Transportation Co., 418 F.3d 246 (3rd Cir. 2005), the appellant there successfully urged that two

---

[20]        Rec., Ex. E. Verified  Rebuttal Verified Statement of Jay R. Ufer, p. 4.

25-year old letters from a representative of the United States Department of Transportation on which a representative of the United States Department of Labor had in turn relied in determining what constituted interstate commerce  were entitled to little, if any, weight or deference.

> Mistakenly referring to the [DOT Employee's] letter as a "ruling by the U.S. Department of Transportation (DOT)," Mr. Fraser of the DOL relied on it twenty-five years later in two 1999 opinion letters stating that certain categories of drivers apparently akin to the appellees in the case at bar were not within the MCA exemption, and were therefore subject to the FLSA's overtime requirements.  The District Court, in turn, relied on one of these DOL letters because the District Court found that the DOT shared the DOL's interpretation.  However, neither the 1974 Benkin letter nor the 1999 Fraser letter the District Court relied on has the formality and weight that would merit judicial deference.
>
> Some agency interpretations of statutes the agency administers are entitled to substantial judicial deference.  Here, the ACCESS drivers contend that Mr. Benkin's endorsement of a "through ticketing" test is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which requires judicial deference to an agency's reasonable interpretation of an ambiguous statute entrusted to its administration.  However, "[i]nterpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant *Chevron*-style deference."  *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).  The informal and cursory Benkin letter falls into this category, and hence does not merit Chevron deference.  The Fraser letter would similarly lack authority, even if the DOL had authority to interpret the MCA, which it does not.  As this court has said, "[t]o grant Chevron deference to informal agency interpretations would unduly validate the results of an informal process."  *Madison*, 233 F.3d at 186.

Id., at 252.

CME submits the same scepticism of lay agency employee expressions on legal issues should apply here as well.[21] Opinions of the various federal courts, CME submits, are those to

---

[21]     Layman expressions of legal opinions by CPUC's own employees have long been given short shrift in the Colorado Supreme Court. McKay v. Public Utils. Com'n, 91 P.2d 965,

which persuasive authority attaches, not to what amount to curbstone opinions of lay federal

agency employees.

## IV.
## <u>CONCLUSION</u>

In a dynamic, fast-paced and increasingly competitive transportation marketplace, the

Congress, through enactment of  preemptive legislation, has authorized motor carriers of

passengers which perform a substantial interstate transportation service over regular routes to

transport intrastate passengers over the same routes, even thought such passengers' transportation,

and the fares charged them, would, in the absence of such federal authorization, be subject to state

regulatory authority.

The CPUC, apparently anxious not to have jurisdiction it previously solely exercised

made subject to a more liberal federal regulatory regime, in which passenger fares are no longer

subject to traditional state regulatory agency's jurisdiction, seeks to maintain the fiction, through

its purported jurisdiction to fine providers of such transportation service,  that CME performs

either (1) no transportation service in interstate commerce, or (2) that if CME does perform any

quantum of interstate transportation service, it is insufficiently substantial to permit CME to

provide transportation service of intrastate passengers free from state regulation.

---

974 (Colo. 1939).("We are not concerned with the wisdom or lack of wisdom of those connected
with the administration of regulatory power to give curbstone opinions as to what may and may
not be done.  The law provides how the commission shall determine an issue, and mere
conversations are impotent to change it."); <u>see also, Public Utils. Com'n v. Tucker</u>, 445 P.2d,
901, 905 (Colo. 1968).

Through the use of prearranged multi-element packages arranged for in advance for passengers whose transportation originates or terminates, or both, outside Colorado, CME provides an essentially seamless prearranged motor carrier service ground  originating or ending all but simultaneously with such passengers' disembarking or boarding an airline for the remainder of an interstate journey. During 2003, the year whose business records are before the Court, CME transported 62,807 interstate passengers out of its overall total of 256,965, or 24.1% of its overall regular route transportation service. CME believes the described prearranged multi-element air-ground service in which it participates is (a) clearly interstate in character, and (2) is also a substantial interstate service, so as to permit it to transport intrastate passengers over the same route or routes, free from the CPUC's regulation of its fares and other related charges to its passengers.

## V.
## REQUESTED RELIEF

CME accordingly requests that this Court enter summary judgment in its favor, and against the CPUC, as follows:

(a) declaring that a substantial portion of CME's transportation of passengers, over regular routes, is interstate and character and may be transported under CME's federally granted operation authorities;

(b) declaring that CME may additionally transport intrastate passengers over the same federally authorized route or routes free from the economic regulatory authority of the CPUC;

(c) declaring that he CPUC's attempt to enforce its rate regulatory regime over the described regular route transportation of passengers interferes with CME's right to engage in interstate commerce under the Commerce Clause, Article I, § 8, of the United States Constitution, as a consequence of which the CPUC has violated CME's civil rights under 42 U.S.C. § 1983; and

(d) permanently enjoining the CPUC, its officers, agents, servants, employees and attorneys from interfering with CME's exercise of its rights described  above, and directing that the enforcement proceeding pending before the CPUC be dismissed, with prejudice; and

(e) awarding CME its attorneys fees and costs pursuant to 42 U.S.C. §1988.

DATED: May 25, 2007.

<div style="margin-left: 40%;">

s/ Thomas J. Burke, Jr.
Thomas J. Burke, Jr.
JONES & KELLER, P.C.
1625 Broadway, Suite 1600
Denver, CO 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
E-mail: tjburke@joneskeller.com

and

Fritz R. Kahn
Fritz R. Kahn, P.C.
1920 N. Street, NW (8th Floor)
Washington, D.C. 20036-1601
Phone: (202) 263-4152
Facsimile: (202) 263-4152
E-mail: xiccga@att.net

</div>

Attorneys for East West Resorts Transportation, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of May, 2007, a true and correct copy of the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> David A. Beckett, Esq.
> Assistant Attorney General
> Business and Licensing Section
> 1525 Sherman St., 5th Floor
> Denver, CO 80203
> david.beckett@state.co.us

> Fritz R. Kahn, Esq.
> Fritz R. Kahn, P.C.
> 1920 N. Street, NW 8th Floor
> Washington, DC 20036-1601
> xiccgc@att.net

I certify that on this 25th day of May, 2007, a true and correct copy of the Plaintiff's Rec., Ex. G, conventionally submitted material was hand delivered to the following:

> David A. Beckett, Esq.
> Assistant Attorney General
> Business and Licensing Section
> 1525 Sherman St., 5th Floor
> Denver, CO 80203

s/   Thomas J. Burke, Jr.

-27-